# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| REGINALD PERKINS, | : | MOTION TO VACATE |
| BOP ID 69454-019, | : | 28 U.S.C. § 2255 |
|   Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:18-CV-4074-SCJ-CMS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
|   Respondent. | : | 1:16-CR-29-1-SCJ-CMS |

## FINAL REPORT AND RECOMMENDATION

This matter is before me on (A) Reginald Perkins's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [80] and Memorandum of Law [80-1], (B) the government's Response [82], and (C) Perkins's Reply [84]. For the following reasons, I **RECOMMEND** that Perkins's § 2255 motion be **DENIED** and that a Certificate of Appealability **NOT ISSUE**.

In 2014, while incarcerated in Jimmy Autry State Prison, Perkins used contraband cell phones to learn the names of law enforcement and judicial officials across the United States. Perkins then impersonated those officials as he called individuals in Georgia and elsewhere and falsely represented that because the individuals had failed to report for jury duty, they were subject to fines and arrest. Perkins instructed the individuals to

purchase cash cards and provide the numbers to him to discharge their fines and avoid arrest. Perkins passed the cash card numbers on to co-conspirators outside Autry State Prison who would transfer money from the cash cards to debit cards and then purchase new cash cards that would enable them to transfer untraceable money back to Perkins. *See* [1] at 3-5.

Perkins was one of many people charged in this criminal enterprise. *Cf.* https://www.justice.gov/usao-ndga/pr/more-50-individuals-charged-massive-corruption-fraud-and-money-laundering-schemes. But, to his credit, when Perkins learned an investigation was underway, he voluntarily met with law enforcement agents and described his role. As most relevant for purposes of his § 2255 motion, Perkins acknowledged the following:

> Q:  So it was then thousands and thousands and thousands of dollars?
> Perkins:  Yeah, I could probably be a millionaire if I saved all that money.
> Q:  Really?
> Perkins:  No questions asked.

Gov. Sent. Ex. 1. And:

> Q:  So over the time period, the, the 6-8 months, the 6-7 months, that you said, I mean, you said it yourself, it's probably a million dollars or so that rolled in?
> Perkins:  Definitely.

*Id.*

In 2016, Perkins and one of the women he had recruited to handle the cash card conversions were indicted for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h). *See* [1]. When the indictment was handed up, it was sealed and Perkins was afforded the opportunity to cooperate with the government to identify others involved. He declined to do so, foregoing the chance to reduce his sentence on that basis. *See* [70] at 29-30.

Perkins did, however, quickly plead guilty and waive, *inter alia*, certain direct appeal and collateral attack rights. *See* [36-1]. In exchange, the government agreed to recommend (1) a sentence at the low-end of the guideline range and (2) a 1-level downward variance, all in addition to (3) a 3-level downward adjustment for acceptance of responsibility. *See id.*

It is noteworthy that when the Honorable Steve C. Jones sought to establish the factual basis for the guilty plea during the Rule 11 hearing, Perkins specifically acknowledged the accuracy of the government's proffer that "he moved approximately a hundred – excuse me – approximately a million dollars worth of these proceeds." [69] at 20. *See also id.* at 21.

However, as his sentencing date approached, Perkins sought to retract the admissions with respect to loss amount that he had made to the

3

FBI and then again during his Rule 11 hearing. To do this, defense counsel filed a sentencing memorandum arguing that "the correct loss amount attributable to Mr. Perkins is $70,785" because the "only reliable and specific evidence in this case shows that Mr. Perkins dealt with three identified individuals and conspired to launder money in the approximate amount of $70,785." [50] at 1, 4. Defense counsel reiterated this argument during the sentencing hearing, contending that Perkins's own statements during his interview were "not reliable" and "not specific." [70] at 4-5.

At the sentencing hearing, the government responded by introducing as its Exhibit 1 a recording of the interview with Perkins's admissions (quoted above) as to the amount of money he had already laundered. *See id.* at 8. And Judge Jones made a factual finding that the government had adequately established a loss amount of $1,000,000. *See id.* at 12 ("Based on what I have heard the Court is going to find that Mr. Perkins – there is evidence that Mr. Perkins made the statement that it's over a million dollars, that the Court finds that the statement is credible, it's believable under the circumstances. So the Court finds that is a credible statement and the Court will therefore overrule and find that there is evidence to show

that it's more than $550,000 and it's more in line with a million dollars or more and will overrule that objection to loss amount.").

The 151-month term of imprisonment that Judge Jones imposed reflected the plea agreement pursuant to which the government recommended that Perkins receive a 3-level adjustment for acceptance of responsibility, a 1-level downward variance, and a sentence at the low-end of the resulting guideline range.  *See* [70] at 23-27.  *See also* [53] (Judgment and Commitment) and [76] (Amended Judgment and Commitment).

Perkins appealed his sentence, raising as his sole issue Judge Jones's determination of the loss amount.  The government invoked the appeal waiver in the plea agreement, and the United States Court of Appeals for the Eleventh Circuit dismissed Perkins's appeal based on that waiver.  *See* [75].

Perkins then filed the *pro se* § 2255 motion now pending before me, stating two grounds for relief:  first, that "he was denied his Sixth Amendment right to effective assistance of counsel during sentencing where sentencing counsel failed to adequately object to the erroneous, inaccurate and speculative loss amount of $1,000,000, based solely on

alleged statements [he] made to law enforcement during a non-custodial interrogation," and, second, that "he was denied his Sixth Amendment right to effective assistance of counsel during plea negotiations where counsel influenced [him] to agree to waive his appeal rights in exchange for nothing of advantage." [80] at 4-5.

Perkins briefed only the first ground for relief in his Memorandum of Law, and he specifically stated therein that it was "his first and sole 28 U.S.C. § 2255 claim." *See* [80-1] at 4. Later, Perkins reaffirmed in his Reply that "[a]s his single . . . claim for relief, Defendant complains that he was denied his Sixth Amendment right to effective assistance of counsel during sentencing where sentencing counsel failed to adequately object to the erroneous, inaccurate [a]nd speculative loss amount of $1,000,000.00, based solely on alleged statements Defendant made to law enforcement during a non-custodial interrogation." [84] at 1-2.

Consequently, I find and conclude that Perkins abandoned the second ground for relief stated in his § 2255 motion because he failed to proffer any factual basis for it or any argument in support of it. *Cf. Timson v. Sampson*, 518 F.3d 870, 874 (11t h Cir. 2008) ("While we read briefs filed

by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned.")  (internal citations omitted).[1]

I also find and conclude that Perkins's first ground for relief is meritless.

In his Memorandum of Law, Perkins asserts that what he told law enforcement agents is that "had he still been in prison, he *could* have been a millionaire and *could* have laundered $1 million in proceeds by that time." [80-1] at 5-6 (emphasis added).  Later, Perkins asserts that he "suggested he 'could have laundered $1 million in proceeds had he remained incarcerated for a longer period of time,'" *id.* at 6, placing words in quotation marks to indicate he is faithfully and precisely excerpting his statement to law enforcement agents during his interview.  Perkins then complains that his "[s]entencing counsel failed to adequately object to federal agents' misrepresentations that Mr. Perkins admitted to having laundered $1 million in proceeds from fraud and other crimes" and argues

---

[1] And even if Perkins had properly raised for decision an argument that his defense counsel "influenced [him] to agree to waive his appeal rights in exchange for nothing of advantage," I would find and conclude that this ground for relief is meritless because the plea agreement itself plainly includes terms that benefitted Perkins, including the government's commitments to recommend a 3-level downward adjustment for acceptance of responsibility, a 1-level downward variance, and a sentence at the low-end of the applicable guidelines range.

that "the actual recorded statement made by Mr. Perkins . . . contradicts any assertion that Mr. Perkins admitted to having laundered $1 million in proceeds." *Id.* at 6. Perkins now contends that he "did not admit to laundering $1 million dollars during the course of the underlying fraud scheme[; he] simply boasted that if he was still in prison, he would have by now laundered $1 million. *Id.* at 10.

This argument is plainly contradicted by the record. As noted above, Perkins specifically acknowledged during his interview with law enforcement agents the following:

> Q:  So it was then thousands and thousands and thousands of dollars?
> Perkins:  Yeah, I could probably be a millionaire if I saved all that money.
> Q: Really?
> Perkins:  No questions asked.

Gov. Sent. Ex. 1. And:

> Q:  So over the time period, the, the 6-8 months, the 6-7 months, that you said, I mean, you said it yourself, it's probably a million dollars or so that rolled in?
> Perkins:  Definitely.

*Id.*

And Perkins specifically acknowledged during the Rule 11 colloquy that "he moved approximately a hundred – excuse me – approximately a million

dollars worth of these proceeds." [69] at 20. *See also id.* at 21. These are not forward-looking "boasts" about the illicit proceeds Perkins might have collected in the future if he had continued to engage in these crimes, but rather past-tense statements of historical fact about the illicit proceeds he had realized already. Thus, while Perkins is correct that "there exists a recorded statement contradicting and refuting," *see* [80-1] at 10, one party's interpretation of what he said, it is his own interpretation, not the government's that is disproven. Here, it is Perkins, not the government, who has misrepresented what he actually said in prior proceedings.

I therefore find and conclude that Perkins's counsel did not provide ineffective assistance of counsel because it is well-established that "[f]ailing to make a meritless objection does not constitute deficient performance." *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (applying the familiar two-part test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)).[2] Accordingly, I have recommended that Perkins's § 2255 motion be denied.

---

[2] The Eleventh Circuit has stated that "because both parts of the [*Strickland*] test must be satisfied to show a Sixth Amendment violation, a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa. *Ward v. Hall*, 592 F.3d 1144, 1163

I have also recommended that a Certificate of Appealability not issue because Perkins does not meet the requisite standards. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (requiring a two-part showing (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," *and* (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"); *see also Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) (holding that the *Slack v. McDaniel* standard will be strictly applied prospectively).

Finally, I find and conclude that no evidentiary hearing is required in this case because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). *See also Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("'To allow indiscriminate hearings in federal post-conviction proceedings . . . for federal prisoners under 28 U.S.C. § 2255 . . . would eliminate the chief virtues of the plea system–speed, economy, and finality,'" and where the record includes a transcript of the plea colloquy, a § 2255 movant will be entitled to an evidentiary hearing "'only in the most

---

(11th Cir. 2010). Here, where Perkins cannot show deficient performance by his counsel, it is unnecessary to discuss whether he can show prejudice.

10

extraordinary circumstances.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 71, 80 n.19 (1962)).

I **DIRECT** the Clerk to terminate the referral of this case to me.

**SO RECOMMENDED AND DIRECTED**, this 31st day of January, 2019.

_____
Catherine M. Salinas
United States Magistrate Judge